**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

FAMILY DOLLAR, INC.,

     Plaintiff,

v.                                         Case No. 2:20-cv-00248-AWA-RJK

AMERICAN ARBITRATION ASSOCIATION, INC.

     Defendant.

**DEFENDANT AMERICAN ARBITRATION ASSOCIATION, INC.'S ANSWER AND
DEFENSES TO PLAINTIFF'S COMPLAINT, AND COUNTERCLAIM**

     Defendant American Arbitration Association, Inc. ("AAA"), by counsel, for its answer and

defenses to the Complaint (ECF 1 "Complaint") filed by Plaintiff Family Dollar, Inc. ("Plaintiff"),

and for its Counterclaim against Plaintiff, states as follows:

**AAA'S ANSWER TO PLAINTIFF'S COMPLAINT**

## I.     INTRODUCTION[1]

     1.     Last year one law firm ("the Law Firm") sought to initiate nearly 2,000 arbitrations
with AAA against Family Dollar. The demands purportedly were made on behalf of current and
former Family Dollar employees asserting claims under the Fair Labor Standards Act and state
law equivalents. Hundreds of the claimants, however, had never been employed by Family Dollar.
Of those who had been employed, many had released any claims through prior settlements or
bankruptcies. Many of the demands were made after the applicable limitations period. Many other
claimants had signed agreements to arbitrate before JAMS in lieu of AAA. Mass arbitration
demands against employers with little regard of the claims' validity is not a proper use of the
arbitration system where the arbitration filing fees may far exceed the merits of the claim.

**ANSWER:** With respect to the allegations in paragraph 1 of the Complaint ("paragraph 1"), AAA

admits only that beginning in July 2019, and continuing thereafter, employees and former

---

[1] AAA restates the allegations and headings contained in Plaintiff's Complaint for convenience
only, and does not admit the correctness of any heading or allegation except as expressly stated
herein.

employees, through counsel, initiated arbitration proceedings against Plaintiff, including by filing

with AAA 970 individual demands for arbitration under the AAA's Employment Arbitration Rules

on July 19, 2019 and an additional 992 individual arbitration demands on September 20, 2019.

AAA lacks knowledge or information sufficient to form a belief as to Plaintiff's purported defenses

to unspecified employee arbitration demands, and on this basis denies the allegations.  AAA denies

all remaining allegations in paragraph 1.

2.     None of the claims proceeded to arbitration. The Law Firm unilaterally withdrew hundreds of them when Family Dollar advised the Law Firm that claimants never worked at Family Dollar, that other claimants never agreed to proceed before AAA or that any claims were released or untimely. The Law Firm withdrew the rest pursuant to a settlement. AAA contends that Family Dollar contractually agreed to pay it over $2.5 million in "administrative fees" for the demands even though the Law Firm withdrew them and arbitration never commenced. Family Dollar seeks a judicial declaration that there is no enforceable agreement between it and AAA for those fees.

**ANSWER:**  AAA denies the allegation that "[n]one of the claims proceeded to arbitration;" to the

contrary, and as shown—at least in part—by the exhibits Plaintiff appended to its Complaint, AAA

began administering the arbitrations demanded by Plaintiff's employees and former employees

("Claimants') in accordance with the AAA's Employment Arbitration Rules.  AAA admits that

Claimants and Plaintiff later notified AAA, on a rolling basis, that certain Claimants were

withdrawing their claims.  AAA further admits that it stopped administering Claimants' demands

against Plaintiff after Plaintiff refused to pay the filing fees it previously had agreed to pay—and

for years preceding the claims at issue, Plaintiff had paid the filing fees for dozens and dozens of

arbitration demands against it filed with the AAA under the AAA's Employment Arbitration

Rules—which fees are set forth in the published rules, and which fees Plaintiff agreed to pay in its

employment agreements with Claimants.  AAA denies all remaining allegations in paragraph 2.

## II.     PARTIES

3.     Family Dollar is a corporation formed under the laws of North Carolina with its principal place of business in Chesapeake, Virginia.

**ANSWER:** AAA lacks knowledge or information sufficient to form a belief as to the allegations in paragraph 3, and on this basis denies the allegations.

4.      AAA is a corporation formed under the laws of New York with its principal place of business in New York, New York.

**ANSWER:** With respect to the allegations in paragraph 4, AAA states that it is a not-for-profit corporation organized under the laws of New York State with its principal place of business in New York, New York.

### III.      JURISDICTION AND VENUE

5.      This Court has original jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1332 because this is a dispute between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

**ANSWER:** The allegations in paragraph 5 are legal conclusions to which no response is required.

6.      This Court has personal jurisdiction over AAA pursuant to Va. Code Ann. § 8.01-328.1(A)(1) and (A)(2). AAA transacts business in the Commonwealth of Virginia, and the claims in this action arise from that business. In particular, they arise from services that AAA contends  it contracted with Family Dollar to provide in Virginia.

**ANSWER:** Paragraph 6 contains legal conclusions to which no response was required.  To the extent a response is required, AAA, by filing its consent motion, has conceded to this Court's exercise of jurisdiction over it.

7.      Venue is proper under 28 U.S.C. § 1391(b) because AAA resides in this judicial district within the meaning of that statute and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. AAA seeks to collect millions of dollars from a company in this district pursuant to an alleged contract that AAA allegedly has with that company and that allegedly arose from communications AAA purposefully directed to the company in this district and that allegedly required performance in this district.

**ANSWER:** Paragraph 7 contains legal conclusions to which no response is required.  To the extent a response is required, AAA does not contest venue.

## IV.    FACTUAL ALLEGATIONS

**A.    The arbitration demands against Family Dollar**

8.    Family Dollar operates more than eight thousand retail stores and has tens of thousands of employees. Its employees sign arbitration agreements as a condition of their employment.

**ANSWER:**  AAA admits that, on information and belief, Plaintiff requires its employees to sign arbitration agreements as a condition of employment.  AAA lacks knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 3, and on this basis denies the allegations.

9.    In July 2019, the Law Firm issued 970 arbitration demands against Family Dollar. It issued an additional 992 demands in September, for a total of 1962 demands. The demands purported to be made on behalf of present and former Family Dollar employees. The demands sought arbitration before AAA.

**ANSWER:**  AAA admits that it received Demands for Arbitration against Plaintiff on behalf of 970 Claimants in July, 2019 and an additional 992 Demands for Arbitration against Plaintiff in September, 2019.  The remaining allegations in paragraph 9 concern the contents of documents that speak for themselves, and AAA denies all allegations inconsistent with true and correct copies of the referenced documents.

10.    The demands did not comply with Family Dollar's arbitration agreements. The agreements require an employee to tender the demand to Family Dollar. If Family Dollar and the employee thereafter do not resolve the dispute, Family Dollar is to file the demand with a mutually agreeable arbitral tribunal. The agreements do not permit what the Law Firm did—bypass Family Dollar and directly demand arbitration before AAA.

**ANSWER:**  The allegations in paragraph 10 concern the contents of documents that speak for themselves, and AAA denies all allegations inconsistent with the contents of the referenced documents.  AAA denies the remaining allegations in paragraph 10, and demands strict proof thereof.

11.    The demands also did not comply with AAA's requirements for a valid demand. AAA's rules require a valid demand to include the amount of damages sought and a copy of the

arbitration agreement pursuant to which the demand has been made. The demands failed to specify any amount of damages sought and did not include any arbitration agreements.

**ANSWER:** With respect to the allegations in paragraph 11, AAA admits only that it maintains

Employment Arbitration Rules, which Rules speak for themselves.  AAA denies all allegations

inconsistent with a true and accurate copy of the provisions of the applicable Rules regarding filing

demands for arbitration, and denies the remaining allegations in paragraph 11.

12.     Many of the demands were defective in other respects as well. Numerous claimants had never been employed by Family Dollar and therefore there was no agreement to arbitrate between Family Dollar and the claimant. Others who had been employed released any claims through prior settlements or bankruptcies. Many of the demands were filed after the applicable limitations period.

**ANSWER:** AAA lacks knowledge or information sufficient to form a belief as to Plaintiff's

purported defenses to unspecified employee arbitration demands by Claimants, and on this basis

denies the allegations.  AAA denies all remaining allegations in paragraph 12, if any.

13.     Family Dollar told AAA the demands were not proper because of these deficiencies and AAA did not commence to arbitrate them. AAA did not provide Family Dollar claim numbers for the demands. Family Dollar did not file answers to any of the demands. AAA did not circulate strike lists of potential arbitrators.  No arbitrators were ever appointed.

**ANSWER:** With respect to the allegations in paragraph 13, AAA admits only that it received

numerous communications from Plaintiff relating to Claimants' demands, including

communications in which Plaintiff argued about the arbitrability of certain Claimants' demands.

AAA also admits that Plaintiff did not file an answer to any of the demands (but affirmatively

states that the Employee Arbitration Rules do not require an answer) and that it did not circulate

lists of potential arbitrators or appoint an arbitrator to any of the cases.  AAA further admits that

it stopped administering Claimants' demands against Plaintiff after Plaintiff refused to pay the

filing fees, but it reopened the cases, as it advised on December 2, 2019, after Plaintiff stated in a

November 21, 2019 email that, "in order to move these arbitrations along Family Dollar will pay

the $2,200 per case filing fee."  AAA denies all remaining allegations in paragraph 13, if any.

14.     Family Dollar and the Law Firm eventually resolved the disputes without arbitration by AAA. The Law Firm unilaterally withdrew many of the demands. It withdrew the rest pursuant to a settlement with Family Dollar.

**ANSWER:**  AAA admits only that it was notified by Plaintiff and counsel for Claimants, on a

rolling basis, that certain demands were being withdrawn and that it was advised by letter dated

January 28, 2020, that the remaining Claimants had reached a settlement agreement in principle

with Plaintiff.  AAA lacks knowledge or information sufficient to form a belief as to the truth of

the remaining allegations in paragraph 14, if any, and on this basis denies the allegations.

**B.     AAA's demand that Family Dollar owes fees for the demands**

15.     On May 5, 2020, months after the demands were resolved without arbitration, AAA sent Family Dollar a letter demanding payment of $2,565,200 in fees allegedly owing and overdue. The letter states that AAA will undertake to "enforce collection" of that amount unless Family Dollar pays the sum in full.  A copy of the letter is attached hereto as Exhibit A.

**ANSWER:**  The allegations in paragraph 15 concern the contents of a document that speaks for

itself.  AAA denies all allegations inconsistent with the contents of the referenced document.

16.     AAA's letter does not include an invoice and does not explain what the fees represent. However, it appears that the sum demanded represents an administrative fee of $2,200 that AAA claims Family Dollar allegedly owes for 1,166 of the arbitration demands ($2,200 x 1,166 = $2,565,200).

**ANSWER:**  The allegations in paragraph 16 concern the contents of a document that speaks for

itself.  AAA denies all allegations inconsistent with the contents of the referenced document.  AAA

further denies the allegation that AAA did "not explain what the fees represent," because, among

other reasons, the filing fees are clearly set out in the applicable Employment/Workplace Fee

Schedule and were referenced in various communications between Plaintiff and AAA at least as

early as October 11, 2019.  AAA denies all remaining allegations in paragraph 16, if any.

17.     AAA's letter does not explain the legal basis for Family Dollar's alleged liability for the administrative fees. The only potential basis for liability the letter references is an email exchange between Family Dollar and AAA that the demand letter implies created a contractual obligation on Family Dollar. The letter asserts that Family Dollar "offered" to pay $2,565,200 in an email on November 21, 2019 and that AAA "accepted" the alleged offer in an email on

December 2, 2019. Copies of the referenced emails are attached hereto as Exhibits B and C, respectively.[2]

**ANSWER:**  The allegations in paragraph 17 concern the contents of a documents that speak for themselves.   AAA denies all allegations inconsistent with the contents of the referenced documents, but does not admit the truth or accuracy of any statements by Plaintiff contained in such documents.   Without admitting that it had any obligation to "explain the legal basis" of its position to Plaintiff's in-house counsel, AAA denies the allegation that AAA did "not explain the legal basis," because, among other reasons, the filing fees are clearly set out in the applicable Employment/Workplace Fee Schedule and were referenced in various communications between Plaintiff and AAA at least as early as October 11, 2019.   Additionally, for years Plaintiff had paid the AAA the initial nonrefundable filing fee in dozens and dozens of arbitrations where claimants filed Demands for Arbitration with the AAA against Plaintiff under the AAA's Employment Arbitration Rules.   AAA denies all remaining allegations in paragraph 17, if any.

18.     The email exchange does not create a binding contract and does not otherwise obligate Family Dollar to pay $2,565,200, or any other amount. Family Dollar and AAA had been discussing which AAA fee structure would apply to the demands if they went forward. AAA maintained its fee would be $2,200 per demand. Family Dollar thought a lesser fee pursuant to a new schedule AAA implemented for mass arbitrations was appropriate. The November 21 email merely states Family Dollar's willingness to advance the higher fees if AAA agreed to refund them to the extent arbitration on the demands did not proceed to arbitration.

**ANSWER:**  The allegations in the first sentence of paragraph 18 are legal conclusions to which no response is required; to the extent a response is required, AAA denies the allegations.   AAA admits that the applicable fee—as disclosed in its Employment/Workplace Fee Schedule—is $2,200 per Demand for Arbitration filed with the AAA under the Employment Arbitration Rules, where, as here, the Plaintiff had agreed to pay Claimants' share of arbitration-related fees and

---

[2] Personal identification information of the claimants and the Law Firm have been redacted in these and the other exhibits.

costs.  AAA further admits that, after agreeing to pay the arbitration provider's fees, and after

having paid the AAA's filing fees for years for dozens of other demands, Plaintiff refused to pay

and attempted to negotiate a lower sum and/or insist that AAA refund the nonrefundable fees to

Plaintiff.  AAA denies all remaining allegations in paragraph 18, and further denies that the

statements by and contentions of Plaintiff in the referenced document are correct.

19.     That email does not form a contract.  The email is not supported by consideration.
Nor did AAA accept the alleged "offer" in the email. Family Dollar's email stated that payment
was conditioned on AAA's returning the administrative fees to the extent the cases did not go
forward. AAA's email did not accept that condition. So even if Family Dollar's email were a
contractual offer, there was no acceptance and meeting of the minds as are necessary for an
enforceable contract. Further, Family Dollar would not owe any amount even if AAA had accepted
the alleged "offer." None of the 1,166 cases went forward—the Law Firm withdrew them all before
any proceedings occurred before AAA—so AAA would be obligated to refund all of the fees even
if the November 21 email were the basis for an enforceable contract.

**ANSWER:**  With respect to the allegations in paragraph 19, AAA admits only that Plaintiff

refused to pay the nonrefundable filing fee for each Demand for Arbitration, even for those

Demands for which it did not contest arbitrability, and attempted to negotiate a lower sum and/or

insist that AAA refund the nonrefundable fees to Plaintiff.  AAA denies all remaining allegations

and legal contentions in paragraph 19, and further denies that the statements by and contentions of

Plaintiff in the referenced documents are correct.

20.     Rather than accept Family Dollar's alleged "offer," AAA's December 2, 2019
email said that it would proceed with administration of the 1,166 cases only upon receipt of the
$2,565,200. That sum was never paid and AAA did not proceed with administration of any of the
1,166 cases. The position in the December 2nd email is contrary to that asserted in AAA's demand
letter. Contrary to the demand letter, AAA's December 2 email does not maintain AAA is legally
entitled to $2,565,200 or any other sum. The email states merely that AAA will not administer the
arbitrations unless and until it receives $2,565,200. It other words, AAA was stating its price to be
the arbitral tribunal.  A price quote does not legally bind a prospective customer.

**ANSWER:** With respect to the allegations in paragraph 20, AAA admits only that Plaintiff refused

to pay the nonrefundable filing fee for each Demand for Arbitration, even those Demands for

which it did not contest arbitrability, and attempted to negotiate a lower sum and/or insist that

AAA refund the nonrefundable fees to Plaintiff.  AAA denies all allegations inconsistent with true

and correct copies of the referenced documents, and further denies that the statements by and

contentions of Plaintiff in the referenced documents are correct.  AAA denies all remaining

allegations and legal contentions in paragraph 20.

21.     AAA subsequently confirmed that it did not expect to receive the administrative fees for cases that did not go forward. The Law Firm notified AAA shortly after its December 2 email that it was withdrawing an additional two of the 1,166 cases because they were filed after the applicable statute of limitations. In response, in an email dated December 12, 2019, AAA acknowledged that it would administer the remaining 1,164 claims upon payment of the reduced sum of $2,560,800. This reduced amount reflected the elimination of $4,400 in administrative fees for the two withdrawn cases. A copy of AAA's December 12, 2019 email is attached hereto as Exhibit D.

**ANSWER:**  The allegations in paragraph 21 concern the contents of a document that speaks for

itself.  AAA denies all allegations inconsistent with a true and correct copy of the referenced

document, and further denies all of Plaintiff's contentions and conclusions relating to that

document.  AAA denies all remaining allegations in paragraph 21.

22.     Family Dollar told AAA by email later that month that a further 29 claims were withdrawn as settled, which reduced the number of demands to 1,135. It told AAA that additional claims would be expected to be withdrawn shortly. A copy of Family Dollar's email is attached hereto as Exhibit E.

**ANSWER:**  The allegations in paragraph 22 concern the contents of a document that speaks for

itself.  AAA denies all allegations inconsistent with a true and correct copy of the referenced

document, and further denies that the statements by and contentions of Plaintiff contained in that

document are correct.  AAA denies all remaining allegations in paragraph 22, if any.

23.     AAA responded in an email on December 30, 2019. AAA's response did not maintain that it is entitled to the $2,565,200 claimed in AAA's demand letter, or the reduced fees mentioned in AAA's December 12 email, or any fees at all. Instead, AAA asked the parties to inform it when they had a list of cases and were ready to proceed. A copy of AAA's December 30, 2019 email is attached hereto as Exhibit F.

**ANSWER:**  The allegations in paragraph 23 concern the contents of a document that speaks for

itself.  AAA denies all allegations inconsistent with a true and correct copy of the referenced

document, and further denies all of Plaintiff's contentions and conclusions relating to that

document.  AAA denies all remaining allegations in paragraph 23, if any.

24.     None of the remaining cases moved forward with arbitration after December 30, 2019. Family Dollar and the Law Firm resolved them without arbitration. The Law Firm informed AAA of this by letter dated January 28, 2020 and instructed AAA to take no action with respect to those cases.  A copy of the January 28, 2020 letter is attached hereto as Exhibit G.

**ANSWER:**  The allegations in paragraph 24 concern the contents of a document that speaks for

itself.  AAA denies all allegations inconsistent with a true and correct copy of the referenced

document.  AAA admits only that it was advised by letter dated January 28, 2020, that the

remaining Claimants had reached a settlement agreement in principle with Plaintiff, AAA further

admits that it stopped administering Claimants' demands against Plaintiff after Plaintiff refused to

pay the filing fees, but it reopened the cases, as it advised on December 2, 2019, after Plaintiff

stated in a November 21, 2019 email, "in order to move these arbitrations along Family Dollar will

pay the $2,200 per case filing fee."  AAA lacks knowledge or information sufficient to form a

belief as to the truth of the remaining allegations in paragraph 24, including the correctness of the

contents of the referenced document, and on this basis denies the allegations.

25.     A month later, on February 21, 2020, AAA sent an invoice for $681,000 to Family Dollar's outside counsel. The invoice says the amount represents AAA's "Initial Administrative Filing Fees" for 1,135 claimants. The invoice was sent after AAA knew no administrative work was needed; as more than three weeks before AAA sent the invoice the Law Firm had notified AAA that the parties had reached a settlement in principle and that no action should be taken with respect to the arbitration demands.  A copy of the invoice is attached hereto as Exhibit H.

**ANSWER:**  The allegations in paragraph 25 concern the contents of a document that speaks for

itself.  AAA denies all allegations that are inconsistent with a true and correct copy of the

referenced document.  Answering further, the referenced document reflects an offer to settle the

parties' dispute by reducing the filing fees Plaintiff owed by applying the Group Filing Fee

Schedule effective November 1, 2019.  AAA denies all remaining allegations in paragraph 25, if

any.

26.     AAA's demand letter says the invoice was an "offer[] to reduce AAA's entitlement" to $681,000. The invoice does not support the demand letter's spin. Neither the invoice sent by AAA nor its cover email indicated that AAA was offering any kind of accommodation or compromise. The invoice merely described the charge as, "Respondent's Initial Administrative Filing Fees." The invoice says nothing about Family Dollar owing fees for 1,166 claims as the demand letter asserts. It does not say AAA is entitled to $2,565,200 and makes no mention of an offer to reduce AAA's "entitlement." AAA's demand letter is revisionist history to try to disguise that AAA is not legally entitled to the $2,565,200, or any other sum, and has fabricated its demand out of whole cloth.

**ANSWER:** The allegations in paragraph 26 concern the contents of a document that speaks for itself.   AAA denies all allegations that are inconsistent with a true and correct copy of the referenced document.   AAA denies Plaintiff's characterization of the document.   Answering further, the referenced document reflects an offer to settle the parties' dispute by reducing the fees owed by Plaintiff as reflected in an email AAA sent on February 21, 2020, that same day it sent the invoice, stating: "As previously advised, the AAA determined that the minimum administrative filing requirements, pursuant to Rule 4 of the Employment Arbitration Rules, were met by Claimants. Respondent's administrative filing fees remain due. However, as a courtesy the AAA is willing to assess such fees on 1,135 cases using the Group Filing Fee Schedule [effective November 1, 2019] as opposed to charging Respondent $2,497,000 under the standard Employment/Workplace Fee Schedule. An invoice reflecting Respondent's administrative fees, in the amount of $681,000, will follow under separate cover."   AAA denies all remaining allegations in paragraph 26, if any.

## V.     CAUSE OF ACTION

27.     Family Dollar realleges and incorporates the preceding paragraphs as if fully set forth herein.

**ANSWER:**  AAA incorporates its answers to paragraphs 1 through 26 as if restated fully herein.

28.     An actual controversy exists between Family Dollar and AAA. AAA contends that Family Dollar entered a contract with it which obligated Family Dollar to pay $2,565,200. Family Dollar disputes that it is contractually obligated to AAA and maintains that it does not owe AAA

any sums for the arbitration demands. Family Dollar seeks relief from the uncertainty and insecurity attendant upon this controversy over its legal rights and obligations.

**ANSWER:** AAA admits only that Family Dollar refuses to pay the initial filing fees for Claimants' demands for arbitration filed in July 2019 and September 2019. AAA admits that Family Dollar has filed a declaratory judgment action, but denies that Family Dollar is entitled to the relief if seeks. AAA denies all remaining allegations, if any, in paragraph 28.

29. To resolve that controversy Family Dollar seeks a judicial declaration of its rights and obligations to AAA under 28 U.S.C. § 2201.

**ANSWER:** The allegations in paragraph 29 are not factual allegations requiring a response. To the extent a response is required, AAA denies that Plaintiff is entitled to any of the relief it seeks in the Complaint.

30. Family Dollar seeks a declaratory judgment that it has no contract with AAA and that it has no obligation, by contract or on any other grounds, to AAA to pay any portion of the $2,565,200 AAA demands.

**ANSWER:** The allegations in paragraph 30 are not factually allegations requiring a response. To the extent a response is required, AAA denies that Plaintiff is entitled to any of the relief it seeks in the Complaint.

## VI.    REQUEST FOR RELIEF

31. Family Dollar respectfully requests that the Court award relief as follows:

   (a)    A declaratory judgment that Family Dollar has no contract with AAA and has no obligation to pay any portion of the $2,565,200 demanded by AAA;

   (b)    Its costs incurred in bringing this action; and

   (c)    All other relief to which it is entitled.

**ANSWER:** AAA denies all allegations in paragraph 31, and further denies that Plaintiff is entitled to any relief whatsoever. AAA denies all allegations in the Complaint not specifically admitted herein.

## AAA'S DEFENSES TO PLAINTIFF'S COMPLAINT

As separate and distinct defenses to the Complaint, AAA alleges the following distinct defenses, without conceding that AAA bears the burden of proof or persuasion as to any of them:

32.     This case is not appropriate for declaratory judgment, including because the dispute concerns a liquidated debt.  Declaratory judgment actions do not lie where, as here, the Complaint merely seeks an advisory opinion.  Plaintiff's claims fail for this reason.

33.     Plaintiff's claims are barred in whole or part by the applicable AAA Employment Arbitration Rules and corresponding fee schedule, which Rules and fees Plaintiff wrote into its arbitration agreements with its employees and repeatedly acknowledged and acquiesced to in the years preceding the parties' dispute.

34.     Plaintiff's claims are barred by the terms of its agreements with Claimants and by Plaintiff's own admissions.  Plaintiff does not dispute the Claimants filed Demands for Arbitration, but seeks to avoid the nonrefundable filing fee that Plaintiff agreed to pay through its course of dealing with the AAA, through its receipt of benefits from the AAA and through the terms of its agreements with Claimants and others, which agreements Plaintiff concedes contained arbitration provisions that Plaintiff's employees were required to sign.

35.     Plaintiff's claims for declaratory judgment fail because Plaintiff acknowledged that it owes the debt AAA seeks to collect.

36.     Plaintiff's claims fail in whole or part based on the parties' course of dealing. Specifically, Plaintiff was well-aware of how AAA's Employment Arbitration Rules, and the corresponding fee schedule, applied because it had used the AAA's services for years preceding the filing of the Claimants' Demands for Arbitration.  In its arbitration agreements with its employees, Plaintiff agreed to pay the nonrefundable fee of $2,200 (or other amount, based on prior fee schedules) for each Demand for Arbitration filed under the AAA's Employment

Arbitration Rules—and in fact did pay that fee in dozens and dozens of cases in the five year period preceding July 2019.  Faced with an increased volume of claims, Plaintiff attempted to rewrite the parties' agreement and change the applicable rules by refusing to pay as agreed and demanding that AAA refund the nonrefundable arbitration fees if Plaintiff ultimately settled any of Claimants' claims.

37.     Plaintiff's claims fail because AAA is an intended third party beneficiary of Claimants' agreements to arbitrate their claims against Plaintiff.

38.     If Plaintiff suffered or sustained any loss, injury, damage or detriment, the same was directly and proximately caused and contributed to by the breach, conduct, acts, omissions, activities, carelessness, recklessness, negligence, and/or intentional misconduct of Plaintiff or others and not by AAA.

39.     To the extent Plaintiff claims that it should not be required to pay AAA's fees based on purported defenses (including but not limited to alleged deficient Demands for Arbitration, statute of limitations, and prior releases), Plaintiff's claims fail including because, on information and belief, Plaintiff's settlements with Claimants took into account those defenses.  Moreover, even if the defenses alleged by Plaintiff were valid, those defenses do not alter the applicable Rules or fee schedules.

40.     Plaintiff's claims are barred in whole or part by the doctrine of unjust enrichment. Plaintiff received the benefit of its arbitration provision, including by avoiding class action claims in federal court, and on information and belief, Plaintiff relied on its alleged defenses to the Demands for Arbitration to negotiate a lower settlement amount with Claimants.  AAA, on the other hand, expended meaningful amounts of time and resources on initial administrative tasks for the Claimants' Demands for Arbitration and thereafter spent additional time and resources

communicating with Plaintiff's in-house counsel and external counsel and with Claimants' counsel regarding the administration of Claimants' claims.

41.     Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

42.     Plaintiff's claims are barred by the failure to state a claim upon which relief may be granted.

43.     AAA specifically gives notice that it intends to rely upon such other defenses as may become available by law, or pursuant to statute, or during any further discovery proceedings of this case, and hereby reserves the right to amend its Answer and assert such defenses.

## AAA'S COUNTERCLAIM AGAINST PLAINTIFF

Defendant AAA (also referred to herein as "Counterclaim-Plaintiff"), asserts the following counterclaim against Plaintiff Family Dollar, Inc. (also referred to herein as "Counterclaim-Defendant" or "Family Dollar"):

### Parties

44.     Counterclaim-Plaintiff AAA is a not-for-profit corporation organized under the law of New York State, with its principal place of business in New York, New York.

45.     Counterclaim-Defendant Family Dollar is a corporation and a resident of Virginia for purposes of this Court's exercise of diversity jurisdiction.

### Jurisdiction and Venue

46.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000.00.

47.     Venue is proper in this District and Division pursuant to Local Civil Rule 3(B)(3).

## Factual Allegations

48.     AAA is a not-for-profit organization that, among other things, administers arbitration proceedings pursuant to published rules that are accessible online.

49.     AAA requires the payment of filing fees with the initial written demand for arbitration to cover its administrative costs.  Some portion or all of those filing fees may be nonrefundable.  AAA is transparent about the process and the applicable fees, maintaining current (as well as archived) copies of the applicable rules and applicable fee schedules on its website.

50.     AAA's rules include its Employment Arbitration Rules.  During the relevant time period, the Employment Arbitration Rules that applied to Family Dollar and Claimants' disputes are the Employment Arbitration Rules and Mediation Procedures amended and effective November 1, 2009, introduction revised October 1, 2017 (the "Applicable Rules" or "Rules").

51.     The Applicable Rules provide in pertinent part:

> The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter "AAA") or under its Employment Arbitration Rules and Mediation Procedures or for arbitration by the AAA of an employment dispute without specifying particular rules. If a party establishes that an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules.

> If, within 30 days after the AAA's commencement of administration, a party seeks judicial intervention with respect to a pending arbitration and provides the AAA with documentation that judicial intervention has been sought, the AAA will suspend administration for 60 days to permit the party to obtain a stay of arbitration from the court. These rules, and any amendment of them, shall apply in the form in effect at the time the demand for arbitration or submission is received by the AAA.

Rule 1 (Applicable Rules of Arbitration).

52.     The Applicable Rules also provide that:

> As a not-for-profit organization, the AAA shall prescribe filing and other administrative fees to compensate it for the cost of providing administrative

services. The AAA administrative fee schedule in effect at the time the demand for arbitration or submission agreement is received shall be applicable.

AAA fees shall be paid in accordance with the Costs of Arbitration section. The AAA may, in the event of extreme hardship on any party, defer or reduce the administrative fees. (To ensure that you have the most current information, see our website at **www.adr.org**).

Rule 43 (Administrative Fees) (bold in original).

53.     The Rules further provide that the applicable filing fee shall be included with a claimant's demand for arbitration, "unless the parties agree to some other method of fee advancement." Rule 4(b)(i)(3) (Initiation of Arbitration).

54.     The Rules also provide that:

If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend or terminate the proceedings.

Rule 47 (Suspension for Non-Payment).

55.     The applicable Employment/Workplace Fee Schedule in effect in July and September 2019 states: "The employer or company's share of filing fees is due as soon as the employee or individual meets his or her filing requirements, even if the matter settles."

56.     Family Dollar agreed that the Applicable Rules would apply to and govern demands for arbitration filed against it by its employees and former employees by specifically referencing those Rules in its arbitration agreements.

57.     On information and belief, Family Dollar required its employees to agree to a binding arbitration provision as a condition of each employee's employment.

58.     On information and belief, Family Dollar required its employees to sign an agreement that provided "**All disputes covered by this Agreement between me and the**

**Company shall be decided by an arbitrator through arbitration and not by way of court or jury trial**."

59. Family Dollar's arbitration agreements with its employees included waivers of class action claims.

60. Family Dollar agreed to pay the arbitration filing fee on behalf of its employees in the arbitration agreements with its employees.

61. Family Dollar's arbitration agreements that it required its employees to sign also specifically referenced AAA.

62. At least three different officers of Family Dollar signed arbitration agreements that included the provisions identified in paragraphs 58 through 61 of this Counterclaim: Bryan Verberg, Senior Vice President, Human Resources; Michael Matacunas, Chief Administrative Officer; and Gary Philan, President and Chief Operating Officer.

63. In accordance with Employment Arbitration Rule 4, the nonrefundable filing fee was due when a claimant filed his or her written demand for arbitration; however, by the terms of Family Dollar's arbitration agreements with its employees, all filing fees were to be paid by Family Dollar (sometimes referred to as the "Company") to the AAA and no filing fees were owed by the employees.

64. Family Dollar demonstrated its agreement to be bound by the Rules in dozens and dozens of separate employment arbitrations in the five year period preceding July 2019, by remitting the nonrefundable filing fee to AAA for demands for arbitration filed by or on behalf of Family Dollar's current or former employees. These filing fees totaled over $100,000.

65.     In addition to the initial filing fee, during the five year period preceding July 2019, Family Dollar paid thousands of dollars in other fees to the AAA for arbitrator compensation and other AAA fees.

66.     Therefore, Family Dollar was aware that the Rules required it to pay nonrefundable filing fees upon the submission of a written arbitration demand and was also aware that additional sums may be due and owing as each case proceeded.

67.     Not only did Family Dollar, at all relevant times, have actual knowledge that the nonrefundable fee was due at the time an arbitration demand was filed with the AAA by its past or current employees, Family Dollar demonstrated its agreement to be bound by the AAA's Rules and applicable fee schedule by repeatedly paying the nonrefundable filing fees to the AAA more than sixty times in the five year period prior to July 2019.

68.     In July 2019, AAA received a total of 970 written demands for arbitration against Family Dollar filed by current or former employees.  On September 2019, AAA received a total of 992 written demands for arbitration against Family Dollar filed by current or former employees. These demands are referred to collectively as "Claimants' Demands."

69.     The Claimants were represented by attorneys from the Law Firm ("Claimants' Counsel").

70.     Claimants' Demands correctly noted that the applicable nonrefundable initial filing fee was $2,200 for each demand for arbitration before a single arbitrator or $2,800 for a three arbitrator panel.   In addition, Claimants' Demands noted that Family Dollar's arbitration agreements specifically provided that Family Dollar would pay all of Claimants' filing fees.

71.     Upon receipt of Claimants' Demands, AAA began to administer each demand for arbitration.  Its employees expended time providing administrative services, including: reviewing

and analyzing the documents included with Claimants' Demands; reviewing and responding to written communications from Claimants' Counsel and Family Dollar concerning the Claimants' Demands; having management review and respond to Family Dollar's assertion that Claimants' Demands did not meet AAA's filing requirements; arranging and conducting telephone conferences with Family Dollar and Claimants' Counsel; reviewing spreadsheets from the parties to track the Claimants at issue; opening more than 1,135 cases on AAA's internal case management system; and, ultimately, closing those cases.

72.     Family Dollar, through its in-house counsel, sent numerous communications to the AAA concerning Claimants' Demands, including written communications on the following dates:

    a.   September 23, 2019;

    b.   September 25, 2019;

    c.   September 27, 2019;

    d.   October 2, 2019;

    e.   October 3, 2019;

    f.   October 7, 2019;

    g.   October 16, 2019;

    h.   October 18, 2019;

    i.   October 25, 2019;

    j.   November 2, 2019;

    k.   November 11, 2019;

    l.   November 14, 2019;

73.     In addition, Family Dollar's outside counsel at Gibson Dunn sent a letter to the AAA dated October 17, 2019, rehashing many of the same contentions regarding the filing requirements, alleged defenses to, and arbitrability of Claimants' Demands.

74.     AAA's employees expended time and resources reviewing and responding to Family Dollar's communications and Claimants' Counsel's communications relating to Claimants' Demands.

75.     Family Dollar, while failing to pay any nonrefundable filing fees, demanded that AAA devote further resources to administering Claimants' Demands.  For example, on November 14, 2019, Family Dollar's in-house counsel asked that the Claimants' Demands be referred to AAA's Administrative Review Counsel (ARC) to make determinations regarding the arbitrability of Claimants' Demands.

76.     Family Dollar, while failing to pay any nonrefundable filing fees, relied on the AAA's Applicable Rules to support Family Dollar's arguments regarding the arbitrability of Claimants' Demands, including in emails dated October 2 , October 25, and November 11, 2019, from Family Dollar's in-house counsel to the AAA and Claimants' Counsel.  And on October 7, 2019, Family Dollar's in-house counsel stated: "we would like to request a full and fair opportunity to be heard on these threshold matters **as provided under the AAA rules**" (emphasis added).

77.     By way of example, Claimants' Demands stated as follows for "Amount of Claim:"

> Claimant declines to specify the amount in controversy at this time, as some information needed to calculate damages is exclusively within Family Dollar's control.

78.     Among other objections, Family Dollar urged that Claimants' statement regarding the amount of damages rendered Claimants' Demands ineffective such that Family Dollar should not be required to pay the initial filing fee of $2,200 to AAA for each of Claimants' Demands.

79.     On October 29, 2019, and in additional communications thereafter, AAA notified the Family Dollar and Claimants' Counsel that Claimants had met the minimum filing requirements.

80.     After the AAA confirmed that the Claimants' Demands met the AAA's minimum filing requirements, Family Dollar still failed to remit the nonrefundable initial filing fees of $2,200 per demand despite stating in a November 21, 2019 email:

> While we continue to believe that none of the arbitration demands sent by [Claimants' Counsel] meets AAA's minimum filing requirements and further believe that the November 1, 2019 fee schedule should be applied to these demands, in order to move these arbitrations along Family Dollar will pay the $2,200 per case filing fee for each of the individuals identified on Exhibit B to [Claimants' Counsel's] November 8, 2019, correspondence with the exception of [certain listed] individuals.
>
> * * *
>
> That would leave 1166 claimants on the list. Please advise whether this is acceptable to AAA. If it is, Family Dollar will forward a check in the amount of $2,565,200 to AAA. We also request, to the extent some of these cases never go forward, that AAA refund the filing fee for those cases in whole or in part.

81.     Effective November 1, 2019, the AAA amended its fee schedule for Employment Arbitrations to include for the first time an Employment/Workplace Group Administrative Filing Fee Schedule.  This new fee schedule, however, did not apply to Claimants' Demands because Claimants' Demands were filed prior to November 1, 2019.

82.     Family Dollar argued on several different occasions that the AAA should apply the November 1, 2019 fee schedule to Claimants' Demands.  AAA considered and rejected Family Dollar's argument with an explanation of the AAA's decision.

83.     Thereafter, Claimants settled their disputes against Family Dollar, and AAA was notified of the settlement in principle of all Claimants' Demands on January 28, 2020.

84.     On information and belief, Claimants' and Family Dollar used the AAA and its forum to further settlement negotiations.

85.     It would be inequitable to allow Family Dollar to reap the benefits of AAA's services without abiding by its agreement to pay AAA the scheduled fees.

86.     Despite the foregoing, as a courtesy and in an effort to resolve its dispute with Family Dollar, AAA offered to accept $681,000, the amount Family Dollar would have owed had the new Group Filing Fee Schedule applied instead of the full amount Family Dollar owed for the nonrefundable initial filing fee for each of Claimants' Demands.  AAA made this offer without waiving any of its rights.

87.     In February 2020, in furtherance of its courtesy offer, AAA sent an invoice to Family Dollar in the amount of $681,000.

88.     To date, Family Dollar has failed to remit any sums to AAA—whether under the published fee schedule that Family Dollar agreed to in its arbitration agreements or under the courtesy offer—for Claimants' Demands.

## **Counterclaim Count I: Breach of Contract**

89.     AAA incorporates the allegations in paragraphs 44 through 88 as if set forth fully herein.

90.     Family Dollar required its employees to agree to binding arbitration provisions, and specifically referenced AAA in at least three of its form arbitration agreements.

91.     Additionally, in those form arbitration agreements, Family Dollar agreed to be bound by the Applicable Rules.

92.     The Applicable Rules and relevant fee schedule require that a nonrefundable fee be paid to AAA when a written demand for arbitration is filed with AAA and AAA has determined that the demand meets its filing requirements.

93.     Family Dollar agreed with its employees that Family Dollar would pay the full initial filing fees to AAA, both the employee's and the employer's shares.

94.     AAA was an intended third party beneficiary of the Family Dollar's arbitration agreements.

95.     Accordingly, Family Dollar agreed to pay the full nonrefundable filing fee to AAA when an employee filed a written demand for arbitration.

96.     Claimants' Counsel filed a total of 1,962 Claimants' Demands with AAA against Family Dollar in July and September 2019.

97.     Claimants' Counsel ultimately withdrew many of the Demands but, as of November 11, 2019, the parties agreed that 1,166 Claimants' Demands remained pending.  For each of these Claimants' Demands Family Dollar was required to pay AAA a nonrefundable initial filing fee of $2,200.

98.     The AAA fulfilled its contractual obligations by performing administrative and other tasks consistent with acting as the administering organization for and in furtherance of the arbitration of Claimants' Demands over the course of several months.

99.     Family Dollar, however, breached its duty to pay in accordance with the AAA's fee schedule.

100.     Family Dollar has failed to remit any of the initial filing fees to the AAA for any of Claimants' Demands.

101.    AAA has been damaged by Family Dollar's breaches, including as set forth in this Counterclaim.

102.    WHEREFORE, AAA requests that the Court enter judgment against Family Dollar on Count I of this Counterclaim, and award AAA a sum in excess of $75,000.00, plus pre- and post-judgment interest, and further award to AAA such additional relief as is just and proper.

### Counterclaim Count II: Unjust Enrichment
### (pleaded in the alternative to Counterclaim Count I)

103.    AAA incorporates the allegations in paragraphs 44 through 88 as if set forth fully herein.

104.    For years, Family Dollar has required its employees to sign arbitration agreements.

105.    Some of the applicable arbitration agreements specifically reference AAA.

106.    Family Dollar has utilized arbitration to avoid jury trials and to avoid class action claims in court.

107.    The arbitration agreements have allowed Family Dollar to avoid damages and judgments rendered by juries.

108.    The arbitration agreements have allowed Family Dollar to avoid the expense of defending against class action claims and putative class action complaints.

109.    To protect its ability to contractually avoid jury trials and class claims to which its employees otherwise would be able to file, Family Dollar has designated AAA as one—and in some arbitration agreements the only—arbitral forum for employees to bring their disputes.

110.    AAA has administered dozens of arbitrations filed against Family Dollar by its current or former employees in the five years preceding the Claimants' Demands.

111.     In reliance on Family Dollars' payment of nonrefundable filing fees, based on the parties' years-long practice in conformance with AAA's Rules, AAA administered the 1,962 Claimants' Demands filed by Claimants counsel.

112.     AAA review and responded to numerous communications from Family Dollar and Claimants' Counsel, considered Family Dollar's arguments, and made decisions regarding whether Claimants' Demands met the filing requirements under the Applicable Rules.

113.     AAA conferred benefits upon Family Dollar as set forth above.

114.     AAA reasonably expected to be compensated for its services, based on the Applicable Rules and relevant fee schedule, based on Family Dollar's arbitration agreements, and based on the parties' prior course of dealing.

115.     Family Dollar was aware that AAA expected payment for its services.

116.     Family Dollar utilized the AAA's Rules and its services to Family Dollar's benefit to negotiate a settlement with Claimants.

117.     Family Dollar has failed to remit any payment to AAA for AAA's services rendered in connection with Claimants' Demands.

118.     It would be unjust to allow Family Dollar to retain the benefit of its arbitration agreements and its settlements with Claimants, without requiring Family Dollar to pay AAA for its services.

119.     WHEREFORE, AAA requests that the Court enter judgment against Family Dollar on Count II of this Counterclaim, and award AAA a sum in excess of $75,000.00, plus pre- and post-judgment interest, and further award to AAA such additional relief as is just and proper.

Date: August 3, 2020                    Respectfully submitted,

**AMERICAN ARBITRATION ASSOCIATION, INC.**

*/s/ Alison Wickizer Toepp*
Alison Wickizer Toepp (VSB No. 75564)
S. Miles Dumville (VSB No. 15748)
REED SMITH LLP
Riverfront Plaza – West Tower
901 East Byrd Street, Suite 1900
Richmond, Virginia 23219
Telephone: (804) 344-3400
Facsimile: (804) 344-3410
atoepp@reedsmith.com
smdumville@reedsmith.com

*Counsel for American Arbitration Association, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of August, 2020, I have electronically filed the foregoing using the Court's CM/ECF system, which will automatically send email notification of such filing to all counsel of record, including the following:

> Lewis F. Powell III (VSB No. 18266)
> Michael R. Shebelskie (VSB No. 27459)
> HUNTON ANDREWS KURTH LLP
> 951 E. Byrd Street
> Richmond, Virginia 23219
> Telephone: (804) 788-8200;
> Fax: (804) 788-8218
> lpowell@HuntonAK.com
> mshebelskie@HuntonAK.com
>
> Wendy C. McGraw (VSB No. 37880)
> HUNTON ANDREWS KURTH LLP
> 500 E. Main Street, Suite 1301
> Norfolk, Virginia 23510
> Telephone: (757) 640-5300;
> Fax: (757) 625-7720
> wmcgraw@HuntonAK.com
>
> *Counsel for Plaintiff*

> /s/ Alison Wickizer Toepp
> Alison Wickizer Toepp (VSB No. 75564)
> REED SMITH LLP
> Riverfront Plaza – West Tower
> 901 East Byrd Street, Suite 1900
> Richmond, Virginia 23219
> Telephone: (804) 344-3400
> Facsimile: (804) 344-3410
> atoepp@reedsmith.com
>
> *Counsel for American Arbitration Association, Inc.*