**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

FAMILY DOLLAR, INC.,

    Plaintiff,

v.                                                       Case No. 2:20-cv-00248-AWA-RJK

AMERICAN ARBITRATION ASSOCIATION, INC.

    Defendant.

**AMERICAN ARBITRATION ASSOCIATION, INC.'S
<u>OPPOSITION TO MOTION TO DISMISS COUNTERCLAIM</u>**

Defendant/Counterclaim Plaintiff American Arbitration Association, Inc. ("AAA"), by counsel, for its Opposition to the Motion to Dismiss the AAA's Counterclaim (ECF 9, the "Motion") filed by Plaintiff Family Dollar, Inc. ("Family Dollar"), states as follows:

**OVERVIEW**

Family Dollar initiated this action seeking a declaration that it is not required to pay AAA for its services. ECF 1 ("Complaint"). On August 3, 2020, AAA filed its answer to the Complaint, along with its counterclaim (the "Counterclaim") against Family Dollar. ECF 7. On August 21, 2020, Family Dollar filed its Motion. The Motion, although filed pursuant to Rule 12(b)(6), focuses in large part not on the sufficiency of AAA's allegations, but instead on the merits of the claims and matters of proof. As explained below, AAA's Counterclaim sufficiently pleads both causes of action. Accordingly, the Motion should be denied.

**LEGAL STANDARD**

"In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court 'must accept as true all of the factual allegations contained in the complaint,' drawing 'all reasonable inferences' in the plaintiff's favor." *Davison v. Loudoun County Bd. of Sup'rs*, 227 F.

Supp. 3d 605, 608 (E.D. Va. 2017) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *Ray v. Roane*, 948 F.3d 222, 226, 230 (4th Cir. 2020) (reversing dismissal and holding that "a motion to dismiss [] tests the sufficiency of the complaint, not its veracity"). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d at 226 (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). "A Rule 12(b)(6) motion to dismiss 'does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses.' " *Id*. (quoting *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

"Generally, the Court may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Davison*, 227 F. Supp. 3d at 608 (citing *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015)). "'A court has wide discretion to exclude matters outside of the pleadings' in evaluating such a motion." *Id.* (quoting *Norfolk Fed'n of Bus. Districts v. Dep't of Hous. & Urban Dev.*, 932 F. Supp. 730, 736 (E.D. Va.), aff'd sub nom. *Norfolk Fed'n of Bus. Districts v. City of Norfolk*, 103 F.3d 119 (4th Cir. 1996)).

## ARGUMENT

### I. The Agreements Attached To Family Dollar's Brief Show That AAA Was An Intended Third Party Beneficiary.

Family Dollar argues that AAA was no more than an incidental beneficiary to Family Dollar's arbitration agreements, without any rights thereunder. Family Dollar is wrong, and its arguments in support of dismissal would have the Court eliminate the third party beneficiary doctrine in its entirety. The Court should deny Family Dollar's Motion.

### A. AAA Was Specifically Identified In Family Dollar's Arbitration Agreements As The Preferred, Default Entity To Administer Arbitration Of Its Disputes With Its Employees.

At its core, Family Dollar's argument is that there can never be a situation in which its arbitration agreements confer any benefit to any party other than Family Dollar and its employees. *See* Mem. at 8-13. But that is not how the law operates. Third party beneficiaries have long been able to enforce contracts like the arbitration agreements in this case:

> "It is well established in this Commonwealth that under certain circumstances, a party may sue to enforce the terms of a contract even though he is not a party to the contract," and "it has been held, for two centuries or more, that any one for whose benefit the contract was made may sue upon it.' " *Levine v. Selective Ins.*, 250 Va. 282, 285, 462 S.E.2d 81 (1995) (emphasis and citation omitted). Further, "if a covenant or promise be made for the benefit, in whole or in part, of a person with whom it is not made, ... such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only." Code § 55.1-119 (renumbering and recodifying, effective October 1, 2019, former Code § 55-22). Therefore, "[t]he essence of a third party beneficiary's claim is that others have agreed between themselves to bestow a benefit upon the third party but one of the parties to the agreement fails to uphold his portion of the bargain." *Levine*, 250 Va. at 285, 462 S.E.2d 81 (citation omitted).

*Tingler v Graystone Homes, Inc.* 298 Va. 63, 104, 834 S.E.2d 244, 268 (2019) (finding that plaintiff had sufficiently stated a cause of action for breach of contract based on allegations of facts from which a fact finder could reasonably infer an intent to benefit a third party and reversing trial court's ruling dismissing the contract claim).

Family Dollar correctly asserts that under certain circumstances documents outside the pleadings may be considered by the Court when ruling on Rule 12(b)(6) motions. AAA agrees with that assertion to the extent it relates to the contracts Family Dollar appended as Exhibits A, B and C to Family Dollar's Brief in Support of its Motion (ECF 10, "Mem.").[1] The plain language

---

[1] While the Court may properly consider the terms of the contracts on which the claims are based (see Exhibits A, B and C to Mem.), the more than 60 pages of emails that Family Dollar appended

of these agreements shows that Family Dollar intended to confer a benefit on AAA, intended to apply the Arbitration Rules of the AAA, and agreed to pay all fees and costs that were assessed by the AAA and the Arbitrator:

> If the parties are not able to mutually agree to an arbitrator and/or arbitration sponsoring organization, the arbitration will be held under the auspices of the American Arbitration Association ("AAA"), and except as provided in this Agreement, shall be in accordance with the then current Employment Arbitration Rules of the AAA ("AAA Rules") (the AAA Rules are available through the Company's Human Resources Department or via the internet at www.adr.org/employment).
>
> …
>
> The Company shall pay the fees and costs of the Arbitrator and/or that are assessed by the organization through which the arbitration is conducted.

Exhibit A to Mem., Mutual Agreement to Arbitrate Claims, at ¶ 8 (Procedures and Rules), ¶ 10 (Arbitration Fees and Costs); *see also* Exhibits B and C to Mem. (same).

Despite the clear language of the arbitration agreements, Family Dollar urges the Court to find that AAA was a mere "incidental beneficiary," purportedly because the agreements also contain language allowing Family Dollar and its employees, on mutual agreement, to select another arbitrator or to agree on a different forum. *See* Mem. at 11 ("So literally anyone in the world can be the arbitrator."). Family Dollar then sets up a straw argument that AAA can serve

---

as its Exhibit D to the Mem. are not properly before the Court on a Rule 12(b)(6) Motion. Rather, in order to consider Exhibit D, the Court must convert the Motion into one for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). But Family Dollar has not complied with Fed. R. Civ. 56, nor this Court's Local Civil Rule 56(B) ("Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed."). Thus, the Court should not consider Exhibit D and it should not convert this Motion to one for summary judgment.

as the administrator of employment arbitrations only if five separate conditions are each satisfied. *Id*. But that's not what the agreements say—rather, AAA is the default forum unless the parties agree to the contrary. Exhibits A-C at ¶ 8. Tellingly, no other arbitration forums, such as JAMS, are even mentioned in the agreements. Moreover, the agreements were drafted by Family Dollar and, to the extent there is any ambiguity, the terms must be construed against Family Dollar. *The Doctors Co. v. Women's Healthcare Assocs.*, 285 Va. 566, 573, 740 S.E.2d 523, 526 (2013).

The cases relied upon by Family Dollar in support of its Motion are inapposite. In *Collins v. First Union Nat. Bank*, 272 Va. 744, 636 S.E.2d 442 (2006), plaintiff investors first argued that they were "customers" of defendant bank because defendant bank received checks from the investors. The *Collins* court correctly rejected that argument on the ground that the customer relationship was with the account holder, not plaintiffs. The plaintiff investors next urged that they were third party beneficiaries, but again the *Collins* court rejected plaintiffs' argument based on testimony from defendant bank's assistant vice president that he refused the investors' earlier requests to open escrow accounts because such accounts would have imposed duties on the bank that inured to plaintiff investors' benefit. Instead, the defendant bank opened an FBO account that benefited only the account holder. Here, however, Family Dollar's agreements expressly select AAA as the forum to adjudicate Family Dollar's employee disputes and, as alleged in the Counterclaim, intended to confer a benefit thereby on AAA, i.e., the right to collect from Family Dollar AAA's published fees for the arbitration administration services it provided. Counterclaim, ¶¶ 51-63, 74, 90-100.

This situation is no different from one involving a life insurance policy, where the insurance company agrees with its insured that, upon the happening of a specified event (the insured's death), the insurance company is obligated to pay the policy benefits to the named

beneficiary. Under Family Dollar's theory, the named insured would not have standing to sue if the insurance company wrongfully refused to pay the beneficiary. That argument falls flat on its face.

In the present case, Family Dollar agreed with its employees that if they could not agree on some other arbitration organization (the specified event), arbitration was required to be conducted by AAA in accordance with AAA's rules, and that Family Dollar would pay AAA's fees. As with a life insurance policy, once the specified event occurred (failure to agree on another arbitration organization), Family Dollar's contractual obligation to arbitrate through AAA, and its obligation to pay AAA's fees, established AAA's right, as the named beneficiary in AAA's agreements, to collect the fees Family Dollar agreed to pay.

Although Family Dollar cites many cases in its brief, none of the cases carry the Motion. *Valley Landscape Co., Inc. v. Rolland*, 218 Va. 257, 237 S.E.2d 120 (1977) involved claims by a third party contractor who was not named in a standard owner-architect contract. The *Valley Landscape* court explained that the contractor did not identify any facts supporting the application of an exception to the controlling authority involving owner-architect contracts (i.e., that "a contractor is an incidental beneficiary absent clear intent manifested in the owner-architect contract to the contrary"), and the fact that the architect acted as an agent for the owner "militates against a third party beneficiary approach. *Id.* AAA, however, serves as a neutral administering organization, not an agent, and unlike *Valley Landscape*, the agreements specifically reference AAA as the default arbitral forum.

In *Environmental Staffing Acquisition Corp. v. B & R Const. Mgmt.*, 283 Va. 787, 725 S.E.2d 550 (2012) the contract at issue included a stipulation identifying the only beneficiaries thereunder—and those beneficiaries did not include the plaintiff. Such is not the case with the

agreements here.  *See* Exhibits A-C to Mem.; *see also* Counterclaim at ¶ 56-62, 90, 93, 94.   In *First Virginia Banks, Inc. v. BP Exploration & Oil Inc.*, 206 F.3d 404 (4th Cir. 2000), the Fourth Circuit reviewed for clear error the trial court's finding that plaintiff was not an intended third party beneficiary of his neighbor's settlement agreement.  There, the plaintiff was not mentioned in the agreement, the agreement was confidential (which the court held suggested it was not intended to benefit any third parties), and, moreover, the court held that plaintiff's witness was not credible.

Similarly, in *Hanover Ins. Co. v. Corrpro Cos., Inc.*, 312 F. Supp. 2d 816 (E.D. Va. 2004), the plaintiff third party surety was not named in the consulting agreement at issue and did not allege that the parties intended to confer a benefit on it.  *Allen v. Lindstrom*, 237 Va. 489, 379 S.E.2d 450 (1989), involved a baseless claim by prospective purchasers who argued they had rights under a real estate listing between sellers and sellers' agents, which argument was wholly unsupported.  In *Zuberi v. Hirezi*, No. 1:16cv1077, 2017 WL 436278 (E.D. Va. Jan. 30, 2017) not only were plaintiffs not mentioned in the contract at issue, plaintiffs actually alleged that the contract was entered to facilitate fraud—which harmed, not benefitted, plaintiffs.  In *Williams v. AES Corp.*, 28 F. Supp. 3d 553 (E.D. Va. 2014), plaintiffs—despite not being named in the contract, never having seen the contract and not knowing the terms of the contract—asserted that they were beneficiaries of a contract between defendants and the government of Cameroon to "provide 'reliable power supply'…for the benefits of Cameroon people, including Plaintiffs." *Id.* at 569-570 ("Plaintiffs do not have a copy of the alleged contract or know any of the specific language therein," and holding that "Plaintiffs are, at best, members of a large class of consumers of electricity within Cameroon").  In *RCI Contractors & Eng., Inc. v. Joe Rainero Tile Co., Inc.*, 677 F. Supp. 2d 914 (E.D. Va. 2010), the complaint was devoid of factual allegations that would

even give rise to an inference that plaintiff was an intended beneficiary of the contract at issue. Thus, Family Dollar's reliance on *Environmental Staffing, First Virginia Banks*, and the other cases discussed supra, is misplaced.

Federal Courts have rejected recent "hypocritical" efforts by employers to avoid the consequences of their arbitration agreements. The same result should obtain here. For example, in *Abernathy v. DoorDash, Inc.* No. C 19-07545 WHA, 2020 U.S. Dist. LEXIS 23312 (N.D.Ca., Feb. 10, 2020), the court compelled an employer to arbitrate over 5,000 claims by employees, finding that the employer was bound by the agreement it drafted and which it had used to deprive its employees of their right to file lawsuit in court.

> For decades, the employer-side bar and their employer clients have forced arbitration clauses upon workers, thus taking away their right to go to court, and forced class-action waivers upon them too, thus taking away their ability to join collectively to vindicate common rights. The employer-side bar has succeeded in the United States Supreme Court to sustain such provisions. The irony, in this case, is that the workers wish to enforce the very provisions forced on them by seeking, even if by the thousands, individual arbitrations, the remnant of procedural rights left to them. The employer here, DoorDash, faced with having to actually honor its side of the bargain, now blanches at the cost of the filing fees it agreed to pay in the arbitration clause. No doubt, DoorDash never expected that so many would actually seek arbitration. Instead, in irony upon irony, DoorDash now wishes to resort to a class-wide lawsuit, the very device it denied to the workers, to avoid its duty to arbitrate. This hypocrisy will not be blessed, at least by this order.

*Abernathy v. DoorDash*, 2020 U.S. Dist. LEXIS 23312 at *32-33.

Although not really relevant to the third party beneficiary issue, Family Dollar contends that it should not have to pay AAA's fees because AAA performed work to administer arbitration demands that were deficient. The court rejected that same argument by an employer in *Adams v. Postmates, Inc.*, No. 19-3042, 2020 U.S. Dist. LEXIS 38729 (N.D.Ca. Mar. 5, 2020). There, Postmates argued that it owed no arbitration fees to AAA based on the petitioner couriers' alleged deficiencies in the demands they filed with AAA:

> As noted, Postmates' position is that no arbitration filing fees are due because Petitioners' individual arbitration demands fail to provide the requisite information specified by the Mutual Arbitration Provision. In Postmates' view, Petitioners' omission of such information demonstrates that they are attempting to arbitrate their claims on a de facto classwide basis. But the Court found that Petitioners' purported motivations for submitting allegedly generalized claims are inapposite. Rather, at its core, the salient issue raised by Postmates is whether Petitioners' arbitration demands comport with the Mutual Arbitration Provision. Under the terms of the Fleet Agreement, any dispute regarding a claimant's compliance with the Mutual Arbitration Provision is reserved exclusively for the arbitrator.

*Adams v. Postmates*, 2020 U.S. Dist. LEXIS 38729 at *76-77.

The *Adams* court further explained that the sufficiency of the arbitration demands filed with AAA against Postmates was not dispositive of the issues before the court and, in event, was a matter to be determined by the arbitrator: "If the arbitrator finds that the demands are non-compliant, the solution would be for the arbitrator to require Petitioners to submit more detailed arbitration demands." *Id.* at *82, n.5; *see also McClenon v. Postmates*, No. 19-cv-06415, 2020 U.S. Dist. LEXIS 126851 (N.D.Ill. July 20, 2020) (compelling arbitration and holding that the arbitrator—not the court—had the authority to determine whether any demands violated the arbitration agreement and further that disputes about the payment of arbitration fees and expenses is for the arbitrator to deiced).

If an employee filed a deficient arbitration demand, the solution is not—as Family Dollar urges in its Motion—for AAA to reject the demand at the outset based on the employer's assertion of a deficiency. Family Dollar's argument, if accepted and applied in court proceedings, would allow a clerk of court to refuse to accept a complaint and refuse to allow a plaintiff to initiate a lawsuit anytime the defendant claimed that the complaint was in some way deficient—whether because it failed to state sufficient jurisdictional facts, a precise amount of damages was not stated, whether the claims were resolved through an earlier settlement, whether the claims were time-barred, or for any other purported deficiency.

At its core, Family Dollar claims that it was harmed by the actions of the attorneys for its employees when they filed allegedly deficient arbitration demands which AAA thereafter proceeded to administer. Because of the attorneys' allegedly improper actions, Family Dollar wants to be excused from paying AAA's fees. But Family Dollar's beef in this case arises from the very dispute resolution procedures it required its employees to agree to as a condition of their employment. Had Family Dollar not required nearly all employee disputes to be adjudicated via arbitration (*see, e.g.,* Exhibit A at ¶ 2), the employees' claims would have been filed in court, and Family Dollar could have availed itself of Fed. R. Civ. P. 11, or state counterparts, which would allow Family Dollar to seek an award of fees, costs or other sums from the Court if its employees claims truly were meritless. But instead Family Dollar required employees to waive their right to have their disputes adjudicated in court and further waive their rights to bring class claims, instead designating AAA as the ***only*** forum in which an arbitration claim could be brought absent agreement to the contrary by Family Dollar and the employee.

These facts are apparent from the face of the arbitration agreements, and AAA has sufficiently stated a claim for breach of contract based on its status as an intended third party beneficiary. *See* Exhibits A, B, and C; Counterclaim at ¶¶ 56-82, 90-101  Thus, Family Dollars' Motion should be denied as to Count I of the Counterclaim.

    **B. Whether The Employees Complied With All Terms Of Family Dollar's Agreements Prior To Filing Their Arbitration Demands Is Neither Dispositive Nor Relevant.**

Family Dollar argues that, because its employees purportedly failed to comply with portions of the arbitration agreements, AAA cannot be a beneficiary of those agreements. Mem. at 3-4, 11. Again, Family Dollar is wrong. An employee's supposed failure to comply with Family Dollar's alleged conditions precedent (*see id.* at 11) would not have permitted AAA to reject the arbitration demand. Such a supposition is akin to a clerk rejecting a complaint and refusing to

assign it a case number for adjudication where the defendant claims the plaintiff failed to comply with conditions precedent. Moreover, whether each separate claim was deficient is a matter of proof, and the AAA Rules and numerous court decisions establish that, in cases such as this, the question of arbitrability is for the arbitrator to decide. *See, e.g., Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 524 (4th Cir. 2017) ("the district court erred in determining the scope of the parties' arbitration clause, as the parties clearly and unmistakably intended for an arbitrator — not the court — to resolve all arbitrability disputes."); *Chorley Enters. v. Dickey's Barbecue Rests., Inc.*, 807 F. 3d 553, 565 (4th Cir. 2015) ("arbitrators — not courts — must decide whether a condition precedent to arbitrability has been fulfilled").

Further, while Family Dollar contends that "AAA thus comes into play only if all [five] contingencies occur" (Mem. at 11) and urges that AAA is precluded from claiming third party beneficiary status because it is possible for the parties to select a different arbitral forum (Mem. at 13), the proof is in the pudding here. Clearly, Family Dollar and its employees did not agree on any arbitrator or other arbitral forum, and the employees filed the demands at issue with AAA. Counterclaim, ¶¶ 68-71. But even if the AAA had not been named in the four corners of the arbitration agreements, the course of dealing between AAA and Family Dollar—as alleged in paragraphs 64-67, 71-79, 82-86 of the Counterclaim, evinces an intent to benefit AAA. *See Tingler*, 298 Va. at 105-106, 834 S.E.2d at 268-269 (citing *Ward v. Ernst & Young*, 246 Va. 317, 435 S.E.2d 628 (1993) and Restatement (Second) of Contracts § 302(1) (1981)).

Family Dollar contends that *Kelly Healthcare v. Prudential*, 226 Va. 376, 309 S.E.2d 305 (1983) is instructive, but again, Family Dollar is wrong. That case was decided on summary judgment and the plaintiff neither alleged nor argued that it was an intended third party beneficiary of an insured's heath care policy because it "was only one member of a large class of health care

providers." *Kelly*, 309 S.E.2d at 307 ("At best, Kelly was a potential and incidental, and never the intended, beneficiary of the contract."). Here, however, Family Dollar selected AAA as the de facto arbitral forum absent a mutual agreement to the contrary between Family Dollar and each employee. And even Justice Gordon dissented from the majority in *Kelly*, holding "Kelly, though not a subrogee, has the sole and undisputed right to receive the payment Prudential owes. It follows that the instrument delivered to Prudential made Kelly the beneficial owner, entitled to maintain this suit." *Id.* at 308.

Family Dollar for years required its employees to arbitrate their disputes and repeatedly used AAA to administer the arbitrations. Counterclaim at 56-67; Exhibits A-C to Mem. Family Dollar for years specified AAA as the lone named forum in its agreements. Exhibits A-C at ¶ 8. And Family Dollar expressly declared that the arbitrations "shall be in accordance with the then current Employment Arbitration Rules of the AAA ("AAA Rules")." Thus, Family Dollar's arguments that AAA was not an intended third party should be rejected out of hand.

Family Dollar's Motion to dismiss Count I of the Counterclaim should accordingly be denied.

## II. AAA's Alternative Unjust Enrichment Claim Was Sufficiently Pleaded.

Family Dollar asserts that AAA must plead facts to establish three elements in order to state a claim for unjust enrichment. Specifically,

(1) The plaintiff conferred a benefit on the defendant;

(2) The defendant knew of the benefit; and

(3) The defendant accepted or retained the benefit in circumstances that render it inequitable for the defendant to retain the benefit without paying for it.

Mem. at 14 (citing *Village Builders on the Bay, Inc. v. Cowling*, 321 F. Supp. 3d 624, 629 (E.D. Va. 2018); *Microstrategy, Inc. v. Netsolve, Inc.*, 368 F. Supp. 2d 533, 537 (E.D. Va. 2005)).

AAA has alleged facts to support each of these elements. First, just as Family Dollar required by its Employment Agreements, AAA provided administrative services for hundreds of arbitration claims filed against Family Dollar. Counterclaim at ¶¶ 57-80, 104, 110-113. AAA further benefitted Family Dollar by providing the forum for these claims so that Family Dollar could avoid defending a class action claim in state or federal court. *Id.* at 106-111. Second, Family Dollar was aware of these benefits—indeed, Family Dollar drafted the agreements the designated AAA as the default forum. *Id.* at 56-67, 104-109; *see also* Exhibits A, B and C. Family Dollar could have designated any arbitral forum other than AAA to administer its employee disputes, but Family Dollar explicitly chose AAA. *Id.* Third, Family Dollar utilized the arbitration agreements that named AAA as the default forum to avoid being named in court actions brought by the employees, and importantly, to avoid litigating potential class actions brought by employees on behalf of themselves and other similarly situated employees. Counterclaim at ¶¶ 56-67. To entice its employees to sign the agreements, and to ensure that it had a reliable arbitral forum, Family Dollar agreed to pay all costs of any arbitration, including the initial filing fee and the administrative fees of the arbitral forum. *Id.* at ¶¶ 60-67, 111; *see also* Exhibits A-C to Mem. Thus, AAA has pleaded facts supporting each element of an unjust enrichment claim.

It would be unjust to allow Family Dollar to reap the benefits of having AAA serve as its default arbitral forum—and AAA in fact administered numerous arbitrations between Family Dollar and its employees for years prior to the filing of Claimants' Demands (*see* Counterclaim at ¶¶ 64-54, 104-111)—without requiring Family Dollar to remit payment to AAA in accordance with the published fee schedule that the parties to this suit had historically followed. *Abernathy v. DoorDash*, 2020 U.S. Dist. LEXIS 23312 at *32-33. The reasonable inference, based on the facts

alleged in the Counterclaim, is that AAA expected to be paid for the benefits it provided to Family Dollar.

Family Dollar, however, argues that because certain of Claimants' Demands lacked merit, and because Family Dollar opted to settle the claims against it months after the Demands were filed with the AAA, the AAA conferred no benefit to Family Dollar whatsoever.  That argument, like Family Dollar's arguments against Count I, go to matters of proof and not pleading.  While Exhibit D is not properly before the Court, AAA submits that, contrary to Family Dollar's contention that "none of the demands was proper" (Mem. at 3), the facts to be elicited through discovery will show that the Demands were facially sufficient, that AAA through its role as the arbitration administering provider conferred benefits on Family Dollar, of which Family Dollar was aware and agreed to, and further, that it would be inequitable to allow Family Dollar to avoid paying AAA a dime.

Moreover, Family Dollar's alleged defenses to the Demands—i.e., that certain employees failed to comply with alleged conditions precedent, that certain claims were released by employees' prior bankruptcies, that the agreements did not apply to certain claims, that certain arbitration demands were initiated outside of the limitations period, or whatever other procedural or merit-based defense may apply—presumably impacted the settlement amount Family Dollar chose to pay its employees to avoid further arbitration.  Family Dollar cannot genuinely argue that AAA is not entitled to its fees merely because Family Dollar opted to settle while the arbitration demands remained pending in lieu of having an arbitrator decide the merits of those defenses— yet that is precisely what Family Dollar, through its Complaint and now through its Motion, asks the Court to condone.

The Court should deny the Motion to dismiss Count II of the Counterclaim.

## CONCLUSION

For the foregoing reasons, American Arbitration Association, Inc., respectfully requests that the Court deny the Motion and award AAA such further relief as is just and proper.

Date: September 4, 2020	Respectfully submitted,

**AMERICAN ARBITRATION ASSOCIATION, INC.**

*/s/ Alison Wickizer Toepp*
Alison Wickizer Toepp (VSB No. 75564)
S. Miles Dumville (VSB No. 15748)
REED SMITH LLP
Riverfront Plaza – West Tower
901 East Byrd Street, Suite 1900
Richmond, Virginia 23219
Telephone: (804) 344-3400
Facsimile: (804) 344-3410
atoepp@reedsmith.com
smdumville@reedsmith.com

*Counsel for American Arbitration Association, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of September, 2020, I have electronically filed the foregoing using the Court's CM/ECF system, which will automatically send email notification of such filing to all counsel of record, including the following:

> Lewis F. Powell III (VSB No. 18266)
> Michael R. Shebelskie (VSB No. 27459)
> HUNTON ANDREWS KURTH LLP
> 951 E. Byrd Street
> Richmond, Virginia 23219
> Telephone: (804) 788-8200;
> Fax: (804) 788-8218
> lpowell@HuntonAK.com
> mshebelskie@HuntonAK.com
>
> Wendy C. McGraw (VSB No. 37880)
> HUNTON ANDREWS KURTH LLP
> 500 E. Main Street, Suite 1301
> Norfolk, Virginia 23510
> Telephone: (757) 640-5300;
> Fax: (757) 625-7720
> wmcgraw@HuntonAK.com
>
> *Counsel for Plaintiff*

> /s/ Alison Wickizer Toepp
> Alison Wickizer Toepp (VSB No. 75564)
> REED SMITH LLP
> Riverfront Plaza – West Tower
> 901 East Byrd Street, Suite 1900
> Richmond, Virginia 23219
> Telephone: (804) 344-3400
> Facsimile: (804) 344-3410
> atoepp@reedsmith.com
>
> *Counsel for American Arbitration Association, Inc.*